IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SALVADOR AGUILAR, individually and on behalf of all others similarly situated,<br><br>              Plaintiff,<br><br>v.<br><br>REXNORD LLC, REXNORD IND. LLC, ZURN IND. LLC, and REXNORD-ZURN HOLDINGS, INC.,<br><br>              Defendants. | No. 17-cv-9019<br>**Hon. Manish S. Shah**<br><br>Magistrate Judge Susan E. Cox |

**FIRST AMENDED COMPLAINT**

Plaintiff Salvador Aguilar brings this Class Action Complaint and Demand for Jury Trial against Defendants Rexnord LLC, Rexnord Industries LLC ("Rexnord"), Zurn Industries LLC ("Zurn"), and Rexnord-Zurn Holdings, Inc., to put a stop to their unlawful collection, use, and storage of Plaintiff's and the proposed Class's sensitive biometric data. Plaintiff alleges as follows based upon personal knowledge as to himself and his own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

**NATURE OF THE ACTION**

1.     This is an action under the Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.* ("BIPA") brought by Plaintiff on behalf of a putative class of similarly-situated individuals, namely, all Illinois citizens who performed work for the Defendants in Illinois who had their fingerprints improperly collected, captured, received, otherwise obtained or disclosed by the Defendants.

2. In Illinois, several hundred individuals perform work for Defendants at Rexnord in Downers Grove (the location where Plaintiff worked) and at Zurn in Bensenville.

3. Since at least 2007, individuals who perform work for Rexnord and Zurn in Illinois have been required to scan their fingerprint in the Defendants' time clocks. That is because the Defendants use a biometric time tracking system that requires employees to use their fingerprint as a means of authentication, instead of key fobs or identification cards.

4. While there are tremendous benefits to using biometric time clocks in the. workplace, there are also serious risks. Unlike key fobs or identification cards-which can be changed or replaced if stolen or compromised-fingerprints are unique, permanent biometric identifiers associated with the employee. This exposes workers to serious and irreversible privacy risks. For example, if a fingerprint database is hacked, breached, or otherwise exposed, workers have no means by which to prevent identity theft and unauthorized tracking.

5. Recognizing the need to protect its citizens from situations like these, Illinois enacted the BIPA specifically to regulate companies that collect and store Illinois citizens' biometrics such as fingerprints.

6. Despite this law, Defendants disregard their workers' statutorily protected privacy rights and unlawfully collect, store, and use their biometric data in violation of the BIPA. Specifically, Defendants have violated (and continue to violate) the BIPA because they did not (and continue not to):

- Properly inform Plaintiff and Class members in writing of the specific purpose and length of time for which their fingerprints were being

      collected, stored, and used, as required by the BIPA;

- Provide a publicly available retention schedule and guidelines for permanently destroying Plaintiff's and the Class's fingerprints, as required by the BIPA; nor

- Receive a written release from Plaintiff or the members of the Class to collect, capture, or otherwise obtain their fingerprints, as required by the BIPA.

7. Accordingly, this Complaint seeks an Order: (i) declaring that Defendants' conduct violates BIPA; (ii) requiring Defendants to cease the unlawful activities addressed herein; and (iii) awarding liquidated damages to Plaintiff and the proposed Class.

## PARTIES

8. Plaintiff Salvador Aguilar is a natural person and citizen of the State of Illinois. He worked for Defendants at the Rexnord facility in Downers Grove from 1979 until in or around October 2017.

9. Defendant Rexnord LLC is a Delaware company with its headquarters in Milwaukee, Wisconsin. Rexnord LLC wholly owns the other Defendants named in this suit.

10. Rexnord Industries LLC is a Delaware company registered to do business in the State of Illinois (File No. 01930362). Rexnord conducts significant business in the State of Illinois, and its Aerospace Headquarters (where Plaintiff and the majority of the putative class work[ed]) is located in Downers Grove, Illinois. Rexnord is a wholly-owned subsidiary of Rexnord LLC.

11. Defendant Zurn Industries LLC is a Delaware company registered to do business in the State of Illinois (File No. 02302624). Zurn conducts significant business in the State of Illinois, and employs at least thirty people at its location in Bensenville, Illinois.

Zurn is a wholly-owned subsidiary of Rexnord LLC.

12. Defendant Rexnord-Zurn Holdings, Inc. is based in Milwaukee, Wisconsin. Rexnord-Zurn Holdings, Inc. is the sole member of Defendant Zurn and is a wholly-owned subsidiary of Rexnord LLC.

## JURISDICTION AND VENUE

13. This Court has jurisdiction over Defendants pursuant to 735 ILCS 5/2-209 because Defendants conduct business transactions in Illinois, have committed tortious acts in Illinois, and are registered to conduct business in Illinois. Additionally, this Court has jurisdiction over Plaintiff Aguilar because he is a resident of the state of Illinois.

14. Venue is proper in Cook County because Defendants Rexnord and Zurn are citizens of Illinois that conduct business transactions in Cook County. Plaintiff is also a citizen of Cook County.

## FACTUAL BACKGROUND

**I.     The Biometric Information Privacy Act.**

15. In the early 2000's, major national corporations started using locations in Illinois to test "new [consumer] applications of biometric-facilitated financial transactions, including finger-scan technologies . . .." 740 ILCS 14/5(c). An overwhelming portion of the public became weary of this growing, yet unregulated technology. *See* 740 ILCS 14/5.

16. In late 2007, a biometrics company called Pay by Touch - which provided major retailers throughout the State of Illinois with fingerprint scanners to facilitate consumer transactions - filed for bankruptcy. That bankruptcy was alarming to the Illinois Legislature because suddenly there was a serious risk that millions of fingerprint records -

which, like other unique biometric identifiers, can be linked to people's sensitive financial and personal data - could now be sold, distributed, or otherwise shared through the bankruptcy proceedings without adequate protections for Illinois citizens. The bankruptcy also highlighted the fact that most consumers who had used that company's fingerprint scanners were completely unaware that the scanners were not actually transmitting fingerprint data to the retailer who deployed the scanner, but rather to the now-bankrupt company, and that their unique biometric identifiers could now be sold to unknown third parties.

17. Recognizing the "very serious need [for] protections for the citizens of Illinois when it [came to their] biometric information," Illinois enacted the BIPA in 2008. *See* Illinois House Transcript, 2008 Reg. Sess. No. 276; 740 ILCS 14/5.

18. The BIPA is an informed consent statute which achieves its goal of protecting individuals' privacy rights by making it unlawful for a company to, among other things, "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information," unless *it first:*

(1) informs the subject in writing that a biometric identifier or biometric information is being collected or stored;

(2) informs the subject in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and

(3) receives a written release executed by the subject of the biometric identifier or biometric information.

740 ILCS 14/15(b).

19. In the employment context, a "written release" specifically means "a release

executed by an employee as a condition of employment." 740 ILCS 14/10.

20.     Biometric identifiers include retina and iris scans, voiceprints, scans of hand and face geometry, and - most importantly here - fingerprints. *See* 740 ILCS 14/10. Biometric information is separately defined to include any information based on an individual's biometric identifier that is used to identify an individual. *See id.*

21.     The BIPA also established standards for how employers must handle Illinois employees' biometric identifiers and biometric information: "[a] private entity in possession of biometric identifiers or biometric information must develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first. Absent a valid warrant or subpoena issued by a court of competent jurisdiction, a private entity in possession of biometric identifiers or biometric information must comply with its established retention schedule and destruction guidelines." 740 ILCS 14/15(a).

22.     Ultimately, the BIPA is simply an informed consent statute, which mandates that entities wishing to collect, store, and/or use biometric information must put in place certain reasonable safeguards to protect individuals' privacy and peace of mind. *See* 740 ILCS 14/15.

**II.     Defendant Violates the Biometric Information Privacy Act.**

23.     By the time the BIPA passed through the Illinois Legislature in mid-2008, many companies who had experimented using biometric data as an authentication method

stopped doing so. That is because Pay By Touch's bankruptcy, described in Section I above, was widely publicized and brought attention to the public's discomfort with the use of its biometric data. Despite the recognized dangers of using biometric data in the private sector, employers have failed to follow retailers' leads in dropping it as an identification method. In fact, many employers now require their employees to register their biometric data, viewing it as a cost-effective method of authentication.

24. Unfortunately, Defendants failed to take note of the retail industry's trend in recognizing the dangers in storing biometric identifiers and the passage of Illinois law governing the collection and use of biometric data. Defendants continue to collect, store, and use its Illinois workers' biometric data in violation of the BIPA.

25. Specifically, since the implementation of the biometric data system, individuals working at Rexnord and Zurn have been required to have their fingerprint scanned in order to enroll them in Defendants' fingerprint database.

26. Defendants use a worker time tracking system that requires workers to use their fingerprint as a means of authentication. Unlike a traditional time clock, workers have to use their fingerprints to "punch" in to or out of work.

27. Unfortunately, Defendants fail to inform their Illinois workers the extent of the purposes for which they collect their sensitive biometric data or to whom the data is disclosed, if at all.

28. Defendants similarly fail to provide their Illinois workers with a written, publicly available policy identifying their retention schedule, and guidelines for permanently destroying their employees' biometric data when the initial purpose for collecting or obtaining their

fingerprints is no longer relevant, as required by the BIPA. A worker who leaves the company does so without any knowledge of when their biometric identifiers will be removed from Defendants' databases - or if they ever will be.

29. The Pay By Touch bankruptcy that catalyzed the passage of the BIPA highlights why conduct such as Defendants' - where workers are aware that they are providing biometric identifiers but are not aware of to whom or the full extent of the reasons they are doing so - is so dangerous. That bankruptcy spurred Illinois citizens and legislators into realizing a critical point: it is crucial for people to understand when providing biometric identifiers who exactly is collecting their biometric data, where it will be transmitted to, for what purposes, and for how long. But Defendants disregard these obligations, and instead unlawfully collect, store, and use their Illinois workers' biometric identifiers and information.

30. Ultimately, Defendants not only disregard their workers' privacy rights, but they also violate BIPA.

**III.  Plaintiff Aguilar's Experience.**

31. Upon information and belief, Zurn LLC entered into a contract with ADP, LLC (a payroll, HR, and tax services corporation) to install and begin using biometric systems in or around 2007.

32. Upon information and belief, and pursuant to its contract with ADP, LLC, Zurn LLC did in fact implement a biometric system for clocking employee time in or around 2007. Zurn LLC implemented this system at each of its locations, including at its subsidiaries Rexnord and Zurn in Illinois.

33. Plaintiff Aguilar performed worked for Rexnord between 1979 and 2017. During

the time since Defendants implemented their biometric system, Aguilar has worked at Rexnord's Downers Grove location.

34. Upon information and belief, at both the Rexnord and Zurn locations, Defendants' practices regarding their biometric systems are identical.

35. After Defendants implemented their biometric system in or around 2007, Plaintiff, along with similarly situated persons, was required to allow Defendants to collect and/or capture his fingerprint so that Defendants could store it and use it moving forward as an authentication method to track his time.

36. Defendants subsequently stored Plaintiff's fingerprint data in their databases.

37. Each time Plaintiff began and ended his workday he was required to scan his fingerprint in order to "clock in" and "clock out" of work.

38. Defendants never informed Plaintiff of the specific purposes or length of time for which Defendants collected, stored, or used his fingerprint.

39. Defendants never informed Plaintiff of any biometric data retention policy developed by Defendants, nor have Defendants ever informed Plaintiff of whether Defendants will ever permanently delete his fingerprint.

40. Plaintiff has never been provided with nor ever signed a written release allowing Defendants to collect or store his fingerprint.

41. Plaintiff has continuously and repeatedly been exposed to the risks, harmful conditions, and violations of privacy through Defendants' violations of the BIPA.

42. As a result of Defendants' conduct, Plaintiff has experienced bodily injury in the form of mental anguish. For example, Plaintiff experiences mental anguish and injury

when thinking about what would happen to his biometric data if Defendants went bankrupt, whether Defendants' biometric system is susceptible to hacking or other theft, whether Defendants will ever delete his biometric information, and whether (and to whom) Defendants share his biometric information.

## CLASS ALLEGATIONS

43. Upon information and belief, the practices, policies, and consequences pertinent to Rexnord's biometric system as described above, in Paragraphs 31-42 in particular, applied to each Class member.

44. Upon information and belief, several hundred individuals in Illinois are required by Defendants to clock in and out of work using Defendants' biometric scanners as described herein.

45. **Class Definition:** Plaintiff brings this action pursuant to 735 ILCS 5/2-801 on behalf of himself and a class of similarly situated individuals, defined as follows:

> **All Illinois citizens who performed work for Defendants in the State of Illinois, who had their fingerprints collected, captured, received, otherwise obtained, or disclosed by Defendants in the State of Illinois.**

46. **Numerosity:** The exact number of Class members is unknown to Plaintiff at this time, but likely ranges between 200-600 individuals. It is clear that individual joinder is impracticable. Defendants have collected, captured, received, or otherwise obtained biometric identifiers or biometric information from at least hundreds of workers who fall into the definition of the Class. Ultimately, the Class members will be easily identified through Defendants' records

47. **Commonality and Predominance:** There are many questions of law and

fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

- whether Defendants collected, captured, or otherwise obtained Plaintiffs and the Class's biometric identifiers or biometric information;

- whether Defendants collected, captured, or otherwise obtained Plaintiff's and the Class' biometric identifiers or biometric information;

- whether Defendants properly informed Plaintiff and the Class of their purposes for collecting, using, and storing their biometric identifiers or biometric information;

- whether Defendants obtained a written release (as defined in 740 ILCS 14/10) to collect, use, and store Plaintiff's and the Class's biometric identifiers or biometric information;

- whether Defendants have disclosed or re-disclosed Plaintiffs and the Class's biometric identifiers or biometric information to any third parties;

- whether Defendants have sold, leased, traded, or otherwise profited from Plaintiffs and the Class's biometric identifiers or biometric information;

- whether Defendants developed a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within three years of their last interaction, whichever occurs first;

- whether Defendants comply with any such written policy (if one exists);

- whether Defendants used Plaintiff's and the Class's fingerprints to identify them; and

- whether Defendants' violations of the BIPA were committed negligently.

48. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class and has retained counsel competent and experienced in complex

litigation and class actions. Plaintiff has no interests antagonistic to those of the Class, and Defendants have no defenses unique to Plaintiff. Plaintiff and his counsel are committed to vigorously prosecuting her action on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiff nor his counsel has any interest adverse to those of the other members of the Class.

49. **Appropriateness**: This class action is appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Class is impracticable. The damages suffered by the individual members of the Class are likely to have been small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's wrongful conduct. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendant's misconduct. Even if members of the Class could sustain such individual litigation, it would not be preferable to a class action because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

**FIRST CAUSE OF ACTION**
**Violation of BIPA, 740 ILCS 14/1, et seq.**
**(On Behalf of Plaintiff and the Class)**

50. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

51. BIPA makes it unlawful for any private entity to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or

biometric information, unless [the entity] first: (1) informs the subject ... in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored , and used; *and* (3) receives a written release executed by the subject of the biometric identifier or biometric information." 740 ILCS 14/15(b) (emphasis added).

52. BIPA also prohibits private entities from disclosing a person's biometric identifier or biometric information without first obtaining consent for that disclosure. *See* 740 ILCS 14/15(d)(l).

53. BIPA also mandates that companies in possession of biometric data establish and maintain a satisfactory biometric data retention (and-importantly-deletion) policy. Specifically, those companies must: (i) make publicly available a written policy establishing a retention schedule and guidelines for permanent deletion of biometric data (i.e., when the employment relationship ends); and (ii) actually adhere to that retention schedule and actually delete the biometric information. See 740 ILCS 14/15(a).

54. Defendants failed and continue to fail to comply with these BIPA mandates, thus committing at least four violations of BIPA with respect to Plaintiff and each putative Class member.

55. Defendants each qualify as a "private entity" under the BIPA. *See* 740 ILCS 14/10.

56. Plaintiff and the Class are individuals who had their "biometric identifiers" collected by Defendants (in the form of their fingerprints), by way of Defendants' biometric scanners, i.e. time clocks. *See* 740 ILCS 14/10.

57. Plaintiffs and the Class's biometric identifiers were used to identify them, and therefore constitute "biometric information" as defined by the BIPA. *See* 740 ILCS 14/10.

58. Rexnord violated 740 lLCS 14/15(b)(3) by negligently failing to obtain written releases from Plaintiff and the Class before it collected, used, and stored their biometric identifiers and biometric information.

59. Defendants violated 740 ILCS 14/15(a) by failing to publicly provide a retention schedule or guideline for permanently destroying biometric identifiers and biometric information they collected from Plaintiff and the Class.

60. Defendants violated 740 ILCS 14/15(b)(l) by failing to inform Plaintiff and the Class in writing that their biometric identifiers and biometric information were being collected and stored.

61. Defendants violated 740 ILCS 14/15(b)(2) by failing to inform Plaintiff and the Class in writing of the specific purpose and length of term for which their biometric identifiers or biometric information was being collected, stored, and used.

62. Defendants violated 740 ILCS 14/15(b)(3) by failing to obtain written releases from Plaintiff and the Class before they collected, used, and stored their biometric identifiers and biometric information.

63. By collecting, storing, and using Plaintiff's and the Class's biometric identifiers and biometric information as described herein and without written consent, Defendants violated Plaintiff's and the Class's rights to privacy in their biometric identifiers or biometric information. 740 ILCS 14/1, *et seq*.

64. On behalf of himself and the Class, Plaintiff seeks: (1) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring Defendants to

comply with the BlPA's requirements for the collection, storage, and use of biometric identifiers and biometric information as described herein; (2) liquidated damages assessed per violation for each of Defendants' negligent violations of the BlPA pursuant to 740 ILCS 14/20; and (3) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

## SECOND CAUSE OF ACTION
### Negligence
**(On Behalf of Plaintiff and the Class)**

65. Plaintiff incorporates the foregoing allegations as is fully set forth herein.

66. Defendants owed Plaintiff and the Class members a duty of reasonable care. That duty required that Defendants exercise reasonable care in the collection and use of Plaintiff's and the Class members; biometric identifiers or biometric in formation. Specifically, Defendants were required to collect, retain, store, and use Plaintiff's and the Class's biometric information and identifiers in compliance with the standards set forth by the BIPA.

67. Additionally, Defendants owed Plaintiff a heightened duty - under which Defendants assumed a duty to act carefully and not put Plaintiff at undue risk of harm - because of the employment relationship of the Parties.

68. Defendants breached their duties by failing to implement reasonable procedural safeguards around the collection and use of Plaintiff's and the Class's biometric identifiers and biometric information.

69. Specifically, Defendants breached their duties by failing to properly inform Plaintiff in writing of the specific purpose or length of time for which his fingerprint was being collected, stored, and used.

70. Defendants also breached its duties by failing to provide a publicly available retention schedule and guidelines for permanently destroying Plaintiff's or the Class's

fingerprints.

71. Defendants' breach of its duties proximately caused and continues to cause Plaintiff mental anguish and mental injury. For example, Plaintiff experiences mental anguish when thinking about what would happen to his biometric identifiers or information if Defendants went bankrupt, whether Defendants will ever delete her biometric identifiers or information, the susceptibility of his biometric information to theft, and whether (and to whom) Defendants shares his biometric identifiers or information.

72. Upon information and belief, the Class experienced and continues to experience the same injuries as the Plaintiff.

73. Accordingly, Plaintiff seeks an order declaring that Defendants' conduct constitutes negligence, and awarding Plaintiff and the Class damages in an amount to be calculated at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and the Class, respectfully requests that this Court enter an Order:

A. Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiff as representative of the Class, and appointing her counsel as Class Counsel;

B. Declaring that Defendants' actions, as set out above, violate the BIPA;

C. Awarding statutory damages for each individual affected by Defendants' violations of the BlPA, pursuant to 740 ILCS 14/20;

D. Awarding injunctive and other equitable relief as is necessary to protect the interests of the Class, including an Order requiring Defendants to collect, store, and use biometric identifiers or biometric information in compliance with the BlPA;

  E. Declaring that Defendants' actions, as described above, constitute either negligence or reckless disregard;

  F. Awarding Plaintiff and the Class their reasonable litigation expenses and attorneys' fees and costs;

  G. Awarding Plaintiff and the Class pre- and post-judgment interest, to the extent allowable; and

  H. Awarding such other and further relief as equity and justice may require.

Dated: January 18, 2018         Respectfully submitted,

Alejandro Caffarelli (#6239078)     SALVADOR AGUILAR, individually and on
Lorrie T. Peeters (#6290434)      behalf of all others similarly situated,
Caffarelli & Associates Ltd.
224 S. Michigan Ave., Ste. 300
Chicago, IL 60604         By: /s/ Alejandro Caffarelli
Tel. (312) 763-6880          Attorney for the Plaintiff

## **CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that on January 18, 2018, the foregoing First Amended Complaint was filed electronically with the Clerk of Court using the ECF system, which sent notification of such filing to:

Joseph Strubbe, Esq.
Frederic T. Knape, Esq.
Zachary J. Watters, Esq.
Vedder Price P.C.
222 N. LaSalle St.
Chicago, IL 60601
(312) 609-7500

/s/ Alejandro Caffarelli
One of Plaintiff's Attorneys